## RANDALL vs. SMITH and others.

Where the trustees of a school district, in apportioning a tax voted at a district meeting among the taxable inhabitants of the district, assess persons whose names are not contained in the last assessment roll of the town, or change the valuation of the property of any taxable inhabitant from that mentioned in the town assessment roll, it is their duty to give notice to the parties interested before completing their assessment; but the omission to do this, does not render them responsible as trespassers at the suit of persons whose property is seized for non-payment of the tax.

If a district clerk, in giving notice of a special district meeting regularly called by the trustees, misrepresent the object of the meeting to some of the taxable inhabitants, who in consequence thereof omit to attend, and a district tax is voted at such meeting, the trustees who cause the tax to be collected are not thereby rendered trespassers, unless they are parties to the fraud.

Where a resolution of a special school meeting, appointing a trustee in the place of one who had been chosen a few days before, stated that the one first chosen had refused to serve; held, in trespass against the trustees for causing a district tax to be collected, that such statement was sufficient evidence that a vacancy had occurred to render the second appointment valid.

Where a district meeting voted a tax for the erection of a school house in October, and without proceeding upon it, or in terms reconsidering or rescinding it, voted a like tax at a special meeting in the succeeding February; held, that the last mentioned vote was notwithstanding a legal and valid one.

ERROR to the Oneida common pleas. The plaintiff in error sued the defendants in error before a justice of the peace and de

clared in trespass for taking a wagon. The defendants pleaded the general issue, and the plaintiff recovered judgment for fifty dollars. The defendants appealed to the common pleas, where the cause was tried in March, 1843.

The plaintiff's wagon was taken by the collector of school district No. 6 in the town of Paris, by virtue of a tax list and warrant originally issued on the 15th of March, 1839, by the then trustees of the district, which were in due form, except that the trustees did not affix their seals to the warrant. The warrant had been renewed by writing under the hands of the trustees, without seals being used, five several times prior to the 25th of October, 1839, and on that day it was again renewed by the defendants as trustees of the district, by writing under their hands and *seals*, setting forth that it was done by order of the superintendent of common schools; and the evidence tended to shew that the wagon was taken and sold within thirty days after said last mentioned renewal. The defendants personally directed the execution of the warrant against the plaintiff's property. The tax list was made out February 20, 1839, and was expressed to be for the erection of a new school house in the district. The plaintiff was a taxable inhabitant of the district, and was assessed in the list for property to the amount of $2,200, and was taxed $28,70. The aggregate amount of taxes in the list was $399,81. It was proved that the district, at a meeting held on the 5th day of February, 1839, voted to raise a tax of four hundred dollars for the erection of a new school house in the district.

The plaintiff proved that at the annual district meeting held on the 1st day of October, 1839, the defendants Tanner and S. Randall and one D. H. Burnham were chosen trustees, and that the meeting then adjourned to the 9th day of the same month, when the defendant Smith was chosen a trustee in the place of Burnham, who, the resolution states, had declined to serve. He also proved that at an annual district meeting held on the 2d day of October, 1838, the district voted a tax of $400 for the purpose of erecting a new school house, which vote had never been, in terms, reconsidered, but it appeared that no steps

had ever been taken under it to levy the tax.   The order of the trustees to the district clerk for calling the meeting of the 5th February, 1839, at which the tax in controversy was voted, was given in evidence, and by it, the purpose of the meeting was expressed to be " to choose a collector in the place of S. S. resigned, and for considering the propriety of building a new school house and for hiring a house in which the school may be taught the present winter, and for transacting such other business as the meeting may deem necessary."   There was conflicting evidence touching the manner in which the clerk notified the inhabitants of this meeting, he testifying that he warned all the taxable inhabitants by reading to them the order, or a notice to the same effect, or by stating the contents of it, or leaving a copy of it; but this was contradicted by several witnesses for the plaintiff, whose testimony tended to shew that the clerk had omitted to notify some and had misled others by misrepresenting to them the object of the meeting, on account of which they did not attend.   The plaintiff also proved that the trustees, in making their assessment contained in the tax list, varied to some extent from the last assessment roll of the town of Paris ; that in some instances they inserted a larger and in some a less amount of property against the name of an individual than that appearing in the town assessment roll, and that in one instance they assessed and taxed an individual who owned and occupied real estate in the district but whose name was omitted on the town roll, though he had lived in the district and on the premises two years ; and that they completed their assessment roll and tax list without giving any notice to any person of their having changed the amount in any instance from that appearing upon the town assessment roll, and without giving the general notice to the inhabitants of the district which town assessors are required to give prior to their meeting to review and correct their roll ; but it appeared that they made out the assessment according to their best judgment, following the town assessment except as above stated.

The judges of the common pleas charged the jury, (1) that the omission of the trustees who made out the assessment roll

Randall *v.* Smith.

and tax list to give the notice required to be given by town assessors, before they completed the valuation and assessed the taxes, did not render the assessment and subsequent proceedings void and did not make the defendants trespassers; (2) that if the district clerk, in giving notice of the meeting at which the tax was laid, did misrepresent the object of that meeting in the manner stated by the plaintiff's witnesses, the defendants were not on that account trespassers, unless they were parties to the fraud; (3) that the defendant Smith, upon the facts shewn, was a lawful trustee of the district; (4) that the vote of the district at their meeting of the 2d October, 1838, to raise a tax of $400, was not under the circumstances of the case any obstacle to the subsequent vote of the 5th of February, 1839, of the tax of $400, the question in the cause; and (6) that the sealed instrument of the 25th October, 1839, renewing the warrant, rendered it of the like force and effect as an original warrant duly signed and sealed by the trustees.

The plaintiff's counsel excepted to the several propositions in the charge, and the jury found a verdict for the defendant. A bill of exceptions was duly signed and the court gave judgment upon the verdict.

*John Ruger*, for the plaintiff in error.

*M. B. Church*, for the defendant in error.

*By the Court*, JEWETT, J. The first question presented in this cause is, whether the irregularity in making out the tax list and warrant by the trustees, in February, 1839, rendered the proceedings void and the defendants trespassers. In making out such tax list and warrant it was their duty to apportion the tax on all the taxable inhabitants within the district, according to the valuations of the taxable property which was owned or possessed by them at the time of making out the list within the district, and to ascertain the valuations of such property, as far as possible, from the last assessment roll of the town of Paris. No person was entitled to any reduction in the valuation of such

property so ascertained, unless he gave notice of such claim to such reduction, to the trustees of the district, before the tax list was made out; and when such reduction was duly claimed, and in every case where the valuation of taxable property could not be ascertained from the last assessment roll of the town, it was the duty of the trustees to ascertain the true value of such property from the best evidence in their power, giving notice to the persons interested, and proceding in the same manner as town assessors are required by law to proceed in the valuation of taxable property. Persons who had within four years been set off to this district from any other, against their consent, and who had within that time paid in such other district, under a lawful assessment, a district tax for building a school house, are exempted from the payment of any tax for building a school house in the district where they shall reside. These are substantially the provisions contained in the statute, (1 *R. S.* 482, §§ 76, 79, 80, 81,) prescribing the duties of trustees of school districts in making out a tax list for the collection of a tax to build a school house. It is manifest from the evidence in the case, that the trustees did not discharge their duty in these respects, in the manner required by the several provisions of the statute. But it by no means follows that they were trespassers. The case of *Alexander and others* v. *Hoyt*, (7 *Wend.* 89,) involved the consideration, in some degree, of this question. The plaintiffs in error, who were the trustees and collector of a school district, were sued by Hoyt, the defendant in error, in trespass for taking property of his on a warrant for the collection of a tax voted to build a school house, on the assumption that the warrant was void. This was based on the fact that the trustees had made out their tax list from the assessment roll of the year in which the tax was voted and list made, which was *then* unfinished, and which was subsequently altered by the assessors at their meeting to review and complete it, instead of the last roll. They made an abstract from the incomplete roll, from which they made their tax list; and it appeared that on the revision by the town assessors, the valuations of some of the inhabitants of the district were reduced. The learned Chief Jus-

Randall *v.* Smith.

tice, in delivering the opinion of the court in that case, says : " It seems to me unnecessary to enquire whether the trustees of school districts, in some of their duties, do not act *judicially.* The proposition cannot be maintained, that in copying an assessment from the assessment roll of the town, they were performing a judicial act. Judicial officers are not responsible for any error of judgment, but if they perform ministerial acts, although connected with their judicial duties, they are held responsible for improper and illegal conduct." The trustees were held to be trespassers in that case. A similar question arose in *Easton and others* v. *Calendar,* (11 *Wend.* 90,) which was an action of trespass against the trustees of a school district under whose warrant the property of the plaintiff had been taken and sold. The defendants justified under a vote of the district to raise a tax of $168,75, to repair the district school house. The trustees made out a tax list for the collection of $177,65, which included the tax voted with five per cent. for collector's fees; of which the sum of $11,59 was put down on the list annexed to the warrant for Calendar to pay. The trustees omitted to assess three individuals who lived and owned taxable property in the district. It was held that the trustees erred, 1, in making the apportionment of the tax voted, by including the collector's fees ; and 2, in omitting to insert *all* the taxable inhabitants; but that they were not liable as trespassers. The late Chief Justice, in delivering the opinion of the court, said: " The apportionment of the tax voted among the taxable inhabitants is, in my opinion, to a certain extent, in the nature of a judicial act. The trustees are to determine who are and who are not taxable within the provisions of the statute; they are then to apportion to each his share, according to the value of his real and personal estate, and in some cases they are obliged to fix such value. Sections 76, 77, 78, (*p.* 482,) shew that the duty of ascertaining the taxable inhabitants is involved in considerable difficulty, and that an error in this respect may arise as well from misjudgment of the law on the part of these officers, as a mistake in fact. They are bound to act and to exercise their best judgment in the apportionment of the tax : and if they confine themselves within the limits of the statute, though

they may err in point of law or in judgment, they should not be either civilly or criminally answerable, if their motives are pure. This is the rule applicable to public officers, bound to exercise their deliberative judgments in the discharge of their official duties, and is applicable to all inferior magistrates, and others called to the performance of functions in their nature and character judicial, while acting within their jurisdiction and the scope of their powers." If then the rule was correctly laid down in that case, and I think it was, it decides this question in favor of the defendants.

Assuming that the evidence shewed that the district clerk, after being regularly required by the trustees to notify a district meeting, instead of a proper performance of that duty, misrepresented to some of the inhabitants the object of the meeting, by which they were induced to remain at home, and neglected to give any notice to others, the question arises, in the next place, whether the proceedings of the meeting were void, and the trustees who had no knowledge of such misconduct rendered liable in trespass for their subsequent acts in making the assessment and attempting to levy the tax. The statute (1 *R. S.* 478, § 63) provides that " the proceedings of no district meeting, annual or special, shall be held illegal for want of a due notice to all persons qualified to vote thereat, unless it shall appear that the omission to give such notice was wilful and fraudulent." The court below charged the jury that the fraud committed by the clerk in giving notice of the district meeting at which the tax was voted would not make the trustees trespassers, unless they were parties to the fraud. The charge in my opinion was correct. If the law were otherwise there would be no safety in the performance of such duties by the trustees, however honestly, faithfully and intelligently they might personally act. Besides, there is no hardship in the case under such rule, for the parties injured by the fraud have a cheap and expeditious remedy provided, by appeal to the superintendent of common schools. (*Laws of* 1830, p 385, § 7.)

The court below charged the jury that Solomon Smith was a lawful trustee of the district. It is argued that the charge in

this respect was erroneous, the plaintiff insisting that no vacancy had occurred in the office when Smith was chosen. At the annual meeting on the 1st day of October, 1839, Barnum was chosen a trustee, and at the meeting held on the 9th day of the same month Smith was chosen a trustee in his place, the record stating that Barnum had refused to serve. No objection is made to his election, except that it is said to have been made too soon. I do not find any provision in the statute which prescribes the time in which a vacancy shall be filled, except 1 *R. S.* 480, § 71, which is, that in case any such office, including that of a trustee, shall be vacated by the death, refusal to serve, removal out of the district, &c. and such vacancy shall not be supplied by a district meeting within one month thereafter, the commissioners of common schools of the town may appoint, &c. The district is competent to fill the vacancy during the month, and I see no reason to doubt but that Smith was regularly chosen in the place of Barnum. He was therefore a lawful trustee.

The charge of the court below affirmed that the vote of the 2d day of October, 1838, to raise a tax of $400, was not, under the circumstances, any obstacle to the vote of a like tax on the 5th of February, 1839. It is supposed by counsel that the first mentioned vote should have been rescinded or reconsidered before the district was authorised again to vote a tax for erecting a school house. But this was unnecessary. The earlier resolution had become inoperative on account of the neglect of the trustees to assess the tax and to make out a tax list thereof within one month after the district had passed that vote. (1 *R. S.* 483, § 82.)

The remaining question, which relates to the effect of the renewal of the warrant by the defendants, under their hands and seals, on the 25th October, 1839, was disposed of unfavorably to the plaintiff, upon full consideration, when these parties were before the court upon a former occasion, (*see Smith v. Randall,* 3*d Hill,* 495,) and no reason is discovered for questioning the accuracy of that determination.

Upon the whole case we think there is no ground for disturbing the judgment.

Judgment affirmed.