Wheeler *vs.* Mills and others.

The notice required by the 19th section of the act prescribing the manner in which assessments of taxes are to be made, (1 *R. S.* 393,) to be given by the assessors, of the completion of the assessment roll, and the opportunity thus afforded to tax-payers of having errors in the roll corrected, is essential to the validity of the tax; it being one of the things to be done by the assessors to obtain jurisdiction over the subject.

Where it appeared that notices were posted only five days before the time specified therein for the review of the roll, instead of the twenty days specified in the statute; *Held* that the assessment was unauthorized and void, and that a sale of land for an unpaid tax conferred no title upon the purchaser.

APPEAL from a judgment entered at the circuit on the verdict of a jury in an action to recover the possession of real estate.

*Joseph E. Palmer,* for the plaintiff.

*Henry C. Murphy,* for the defendants.

*By the Court,* Brown, J. This is an action to recover the possession of certain lands in the city of Brooklyn, tried before Mr. Justice Strong, at the Kings circuit, in March, 1857, when a verdict was directed for the plaintiff, the defendants' exceptions to be first heard at the general term. The plaintiff claimed title under a lease made by the mayor and common council of the city of Brooklyn, to one William

Austin, dated the 11th day of April, 1851, for the term of one thousand years, upon a sale for unpaid taxes, and an assignment thereof by the lessee, William Austin, to the plaintiff, by deed bearing date May 1st, 1851. Various objections were made to the proceedings to assess and collect the tax for the non-payment of which the premises in dispute were sold, only one of which I think it worth while to notice at this time.

By the 19th section of the act prescribing the manner in which assessments of taxes are to be made, (1 *R. S.* 393,) the assessors are directed to complete the assessment roll on or before the time therein named and make a fair copy thereof, and leave the same with one of their number. They are then forthwith to cause notices thereof to be put up in three or more public places in their town or ward. These notices shall set forth that the assessment rolls are completed, and a copy thereof left with one of their number designated in the notices, at a place specified therein, where the same may be seen and examined by any of the inhabitants of the town or ward, during twenty days; and that the assessors will meet on a certain day, at the expiration of such twenty days, and at the time and place specified in such notice, to review their assessments, on the application of any person conceiving himself aggrieved. Section 21 provides that the roll, during the twenty days, shall be submitted to the inspection of all persons who shall apply for that purpose; and sections 22 and 23 provide for a review and re-examination upon the application of tax-payers thinking themselves aggrieved, and for a reduction of the valuations and assessments, when they prove to be erroneous. These several provisions are designed to secure to the tax-payer the privilege of examination and hearing before the board of assessors, and of offering evidence before them of the condition and valuation of his property, before they shall by their certificate make such assessment final and conclusive to charge his estate with the payment of the tax to be apportioned thereon. The assessment roll,

with the assessors' certificate attached thereto, when delivered to the board of supervisors, has been likened in some of the cases to a judgment roll, because when the latter body ascertain the taxes to be assessed, and have distributed the same upon the taxable inhabitants of the town, ratably in proportion to the valuations of the real and personal estate set opposite their names in the roll, the same is the basis and the authority for issuing the warrant for the collection of the tax. That the party who is charged with the payment of the tax should have an opportuuity to be heard before his liability becomes irrevocably fixed, is in accordance with all our theories of rights and duties, and is a privilege of which it appears to me he cannot be deprived by the omission or action of the assessors. This notice to the tax-payers, and the opportunity to examine the roll and to correct errors contained therein, is essential to the validity of the tax, because it is one of the things to be done by the assessors to obtain for them jurisdiction over the subject. It never could have been intended that the quantity, quality and valuation of the property of the inhabitant, upon which he was to be charged with the payment of taxes, should rest exclusively in the discretion of the assessors; and that it does not so rest in their discretion, positively and exclusively, is owing to the presence of the provisions to which I have referred. For I know of no other tribunal and no other time when and where a mistake in the kind of property, or an over estimate of its valuation, can be corrected, except the board of assessors, and at the time to be named in their notice for that purpose. In *Van Rensselaer* v. *Witbeck*, (3 *Selden*, 517,) exception was taken to the form of the assessors' certificate attached to the assessment roll. It certified that they had estimated the real estate therein at the sums which a majority of the assessors had deemed proper, and that the roll contained a true statement of the aggregate amount of the taxable personal estate of &c. over and above the debts due from such persons respectively, and excluding stock otherwise taxable, according to the usual way of assess-

ing. The statute required them to certify that they had estimated the value of the real estate "at the sums which a majority of the assessors have decided to be the true value thereof, and at which they would appraise the same in payment of a just debt due from a solvent debtor," &c. The court of appeals held the defect in the certificate was fatal to the proceedings, and the certificate did not confer upon the board of supervisors jurisdiction to issue the warrant; that the warrant and roll constitute process in the nature of an execution, and must be construed together, and the defect of jurisdiction being apparent upon the face of the papers, was no protection to the collector for the seizure and sale of the personal property which was the subject of the suit. The cases of *Sharp* v. *Speir*, (4 *Hill*, 76,) *Sharp* v. *Johnson*, (*Id*. 92,) and *Whitney* v. *Thomas*, (23 *N. Y. Rep*. 281,) concur in the doctrine that when persons are to be divested of the title to their property by statutory proceedings, the directions of the statute must be strictly pursued.

On the trial of this action, one of the assessors was sworn and examined as a witness for the plaintiff, and against the defendants' objection and exception he was allowed to testify that they had the law before them, and put up the notices of the completion of the assessment roll and of its being left for examination, according to law. It is not worth while to consider the question of the admissibility of the evidence, because the defect which I think exists in the plaintiff's title, appeared immediately upon the cross-examination of the same witness. He testified that the notices were posted for some five days before the day specified therein for the review of the roll. Thus it appeared affirmatively upon the trial that but five days were given to the tax-payer to inspect and examine the roll, before the time appointed for its re-examination and review by the assessors. These are not cases in which public officers are presumed to have done their duty. It must appear that every thing was done which the statute makes essential to the due execution of the power intrusted to them. For these

reasons we think the assessment, which lies at the foundation of the plaintiff's title, unauthorized and void.

There should be a new trial, with costs to abide the event.

[ORANGE GENERAL TERM, September 14, 1863. *Brown, Scrugham* and *Lott,* Justices.]