(47 App. Div. 278.)

PEOPLE ex rel. SCHOFIELD et al. v. SCHOONOVER et al.

(Supreme Court, Appellate Division, Second Department. January 9, 1900.)

1. MUNICIPAL CORPORATIONS—TAXATION—ASSESSMENT ROLL—DUTIES OF VILLAGE CLERK—POWER OF VILLAGE TRUSTEES.

Port Jervis Village Charter (Laws 1896, c. 529) § 25, subd. 2, abolished the board of assessors thereof, and directed the village clerk thereafter to prepare its assessment roll from the town of Deerpark, from which the village of Port Jervis was created, and to follow the town assessment roll as to valuation of taxable property, and required him to submit such roll to the village board of trustees for revision. Section 29 gives the board exclusive power to add to the assessment roll, at a just valuation, any property omitted therefrom. Relators were not assessed for personal property on the preceding assessment roll of Deerpark, and the village clerk, pursuant to a resolution of the trustees, added relators' names to his assessment roll for 1897, and assessed them as owners of bank stock. *Held*, that the clerk's action was valid, since the trustees had power to assess the relators, the clerk's action being the official action of the trustees.

2. SAME—NOTICE TO PARTIES BASED ON ASSESSMENT ROLL.

Under Port Jervis Village Charter (Laws 1896, c. 529) § 29, empowering the trustees of the village to ascertain the true value of property omitted from the tax assessment roll, and to give notice to persons interested, and proceed in the same manner as town assessors in the valuation of taxable property and the hearing of grievances, placing one upon an assessment roll in the first instance without giving him notice did not affect the validity of the tax, when due public notice was given, fixing a day on which to hear grievances; he having appeared, and his objections to the tax having been heard.

Appeal from special term, Orange county.

Certiorari by the people, on the relation of R. Edward Schofield and others, against George Schoonover and others, as trustees of the village of Port Jervis, and George M. Wells, clerk of that village. From a judgment striking from the roll an assessment against the relators as owners of personal property subject to taxation (57 N. Y. Supp. 498), defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

John W. Lyon, for appellants.
R. Ed. Schofield, for respondents.

PER CURIAM.[1] The relators were assessed on the tax roll of the village of Port Jervis, which is in the town of Deerpark, Orange county, for personal property, as the owners of certain bank stock. By subdivision 2 of section 25 of the charter of the village of Port Jervis (chapter 529, Laws 1896) the board of assessors of the village was abolished, and the village clerk was directed to prepare the assessment roll of the village, so far as possible, from the last preceding assessment roll of the town of Deerpark after its final revision by the town assessors, following said town assessment roll as to valuation of taxable property. He is directed thereafter to submit the roll when so prepared to the board of trustees for revision as thereinafter in the said act provided, and after such revision by the board of trustees, and upon receiving from them their direction, stating the several sums to be raised by tax for the current year, to apportion the sums according to the valuation, in the same manner as required for town and county tax lists. By section 29 of the charter it is provided:

"The board of trustees shall have the exclusive power to correct the assessment-roll in respect to taxes imposed by virtue of this act in the same manner as boards of supervisors may by law correct the town rolls of their county; the said board shall also have exclusive power to add to said assessment-roll any property improperly omitted therefrom at a just and equitable valuation. Where the valuation of taxable property cannot be ascertained from the last assessment-roll of the town, or where the valuation of such property shall have increased or diminished since the last assessment-roll of the town, or an error, mistake or omission on the part of the town assessors shall have been made in a description or valuation of taxable property, the trustees shall ascertain the true value of the property to be taxed from the best evidence in their power, give notice to the persons interested and proceed in the same manner as the town assessors are required by law to proceed in the valuation of taxable property and hearing all grievances and a revision of the town assessment-roll. Upon the completion of the assessment-roll and the approval thereof by the trustees, the clerk shall make and file a true copy of the same with the treasurer. It shall be the duty of the president of said village forthwith to execute, under the corporate seal, and attach to such roll a warrant to the clerk as village collector of such taxes, similar in form to the one prescribed by law for the collection of town and county taxes, specifying therein what time the same shall be returned."

On the assessment roll of the town of Deerpark for 1896, and as finally revised by the town assessors, the relators were not assessed for personal property. In April, 1897, the village clerk prepared an assessment roll from the town roll of the previous year, but, in pursuance of a resolution of the village trustees, added thereto the holders of bank stock in the village, including the relators, and an assessment was placed against them for such personalty. These assessments were imposed without personal notice to the parties assessed. Upon the completion of the roll the trustees gave public notice of such completion, and that they would meet on a specified day to review the same, on the complaint of any person aggrieved, in the same manner as is required by law on the part of town assessors. The relators appeared on grievance day, and objected to the

[1] This opinion was written by Mr. Justice CULLEN before his designation as an associate judge of the court of appeals, and is adopted by this court.

assessment on the ground that the same did not appear on the town assessment roll. the previous year. This objection was overruled, and the assessment roll confirmed. Thereupon the relators sued out a certiorari, upon the return to which, after hearing evidence of the facts stated, the special term made an order striking the assessments from the roll. From that order this appeal is taken.

The learned judge at special term, without passing on the power of the board of trustees to impose an assessment upon the relators, held that the action of the clerk in adding these names was unauthorized and void, because by the statute he was directed to prepare the village assessment roll from the last town roll. We are of opinion that this ground is untenable. The clerk did comply with the statute, though he went beyond its terms. But if the trustees had the power to assess the relators, though they were not assessed in the town roll, then they were empowered to direct the village clerk to place on the roll the additional assessments, the same as they might have employed any other amanuensis for the purpose. The action of the clerk is not to be considered as his official action, but the official action of the trustees who directed him.

Nor is the objection that the assessment was placed on the roll in the first instance without notice to the parties assessed well founded. It is true that no valid tax can be imposed except upon notice and opportunity for a hearing given to the taxpayer, and a statute which does not provide for such notice and hearing is unconstitutional and void. Stuart v. Palmer, 74 N. Y. 183. But also "it is undoubtedly true * * * that an assessment may be made in the first instance in any manner that the legislature sees fit to direct, provided that an unqualified and unfettered right of appeal is given, whereby the damages may be ascertained in the manner required by the constitution." People v. Board of Trustees of Village of Haverstraw, 151 N. Y. 75, 45 N. E. 384. This was written of proceedings to condemn land, but it is equally applicable to proceedings to impose taxes or assessments. In fact, throughout the whole state, so far as we know, assessments are first made without hearing the taxpayer or giving him notice. But, after the tentative roll has been prepared, public notice is given, and opportunity is afforded taxpayers for a hearing. We do not think it has ever been doubted that this method fully complied with all the constitutional requirements. In the case now before us the trustees were required to, and did, give public notice and hearing to the taxpayers. At that hearing the relators appeared, and their grievances were considered and determined. This was sufficient, unless the language of section 29 is to be construed as requiring the trustees to give a special notice to the persons interested, in addition to the general public notice. We think that such is not the requirement of the statute, though it is unnecessary to discuss the question at length, because the relators appeared before the board on grievance day and had their hearing. In Jewell v. Van Steenburgh, 58 N. Y. 85, the trial judge charged, with reference to lack of notice:

"If the party appears and has a full consideration, I regard that as a waiver. * * * If Jewell appeared before the assessors, and the matter was consid-

ered, that is equal to having appeared upon the notice, if he was heard in reference to the increased value of his property."

As to this instruction Chief Judge Church said:

"The charge was substantially correct. If the plaintiff appeared and was heard upon his increased valuation, he had no reason to complain. The only criticism that can be made to it is that the judge should have stated more explicitly that if the plaintiff knew of the increased valuation, and appeared, and had an opportunity to be heard or was heard with reference to it, he was concluded."

This brings us to the last question in the case,—the duties and powers of the board of trustees in making the village assessment roll. Such powers and duties are in many respects the same as those conferred upon the trustees of school districts; and several opinions from the superintendent of instruction have been cited to us to show that the power of such trustee in making up the roll for school taxes is limited, and by no means as plenary as those possessed by assessors in making the ordinary assessment roll of the town. We do not deem it profitable to discuss the opinions referred to. The tax imposed for village purposes is a wholly new and original tax. The language of the statute gives the trustees the broadest power to change or alter the assessments made by the town assessors. In fact, as the tax is an original one, we think it was necessary, in order for the statute to be valid, that it should give the trustees such plenary power. Before the new tax could be imposed, the taxpayer had a right to be heard; for it may very well be that his liability to taxation, or the amount of such liability, had entirely changed between the time when he was assessed for taxation for general public purposes and the time when he was assessed for village taxation. As a resident at the earlier time, he would be justly liable to taxation on such personal property as he might possess; but before the later period he might move away from the village, and not be subject to taxation for village purposes. We think that the direction of the statute that the last town roll should be prepared for the village trustees was merely to give them a basis upon which to work, and to facilitate and lighten their labors, but we do not regard it as an integral or vital step in the proceedings to levy the village tax. The validity and effect of that tax proceed from the action of the trustees in preparing a tax roll, in giving notice and hearing to the taxpayers, and from confirmation or revision after such hearing. The relators might at the time of the town assessment have been subject to debts which exceeded the value of their bank stock and exempted it from taxation, but it by no means follows that such was the case when the village assessment was imposed. As the relators gave no proof on this subject, their assessment was proper.

The judgment appealed from should be reversed, with $10 costs and disbursements, and the proceedings of the trustees confirmed, with $10 costs.